## Snyder *v.* Union Drawn Steel Company, Appellant.

*Negligence—Master and servant—Elevators—Contributory negligence—Judgment for defendant n. o. v.*

In an action against an employer to recover damages for personal injuries sustained by an employee while working about an elevator, where it appeared that the elevator stuck in the shaft at an upper floor, and that while plaintiff was endeavoring to pry it loose, with one foot on the platform of the elevator and the other on the floor of the building, the elevator suddenly dropped carrying plaintiff with it, and it further appeared from plaintiff's testimony that at the time of the accident, he was aware of the risk that he was running, he was guilty of contributory negligence precluding his recovery.

Argued Oct. 8, 1915. Appeal, No. 48, Oct. T., 1915, by defendant, for judgment of C. P. Beaver Co., June T., 1913, No. 119, on verdict for plaintiff, in case of John G. Snyder v. Union Drawn Steel Company. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HOLT, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $1,750.00 and judgment thereon. Defendant appealed.

*Errors assigned*, among others, were in refusing to direct a verdict for defendant, and in refusing to enter judgment for defendant n. o. v.

*Forest G. Moorhead,* with him *J. Rankin Martin, Homer H. Swaney* and *John G. Marshall,* for appellant.

*Lawrence M. Sebring,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, January 3, 1916:

Some time in the latter part of 1911 the Union Drawn Steel Company installed an elevator in its plant in the town of Beaver Falls, this State. The appellee helped to install it and continued to serve as an employee of the appellant until January 20, 1912, when he was injured by the falling of the elevator. Early in the morning of that day something caused it to stick just above the third floor of the building, and the plaintiff, who at the time was down in the cellar, was directed to "fix it" by some one authorized to give him orders. After he reached the place where the elevator had stopped he attempted, with the assistance of others, to loosen it, and, while so engaged, with one foot on the floor of the building and the other on the platform of the elevator, it suddenly dropped, and he was carried with it down the shaft, sustaining the injuries for which he seeks to hold the appellant liable. The negligence which he alleges made it responsible for the fall of the elevator was its failure to have sufficient water in the compression tank and cylinder to prevent the platform of the elevator from falling suddenly when released. The testimony in support of the alleged negligence—which need not be recited in detail—was sufficient to carry that question to the jury, but the clear contributory negligence of the plaintiff stood in the way of his recovery.

On reaching the place where the elevator had stuck, the appellee found that safety shoes had caught the platform and held it just above the third floor. He testified that the only thing to be done was to put a pry under the platform and raise it up so that the shoes might drop back into place. He proceeded to put a bar under the

platform, and, while working with one foot on it and the other on the floor of the building, or on the prying bar, the elevator suddenly descended. In the charge to the jury and in the answer to the seventh point submitted by the defendant, the instruction of the learned trial judge was that, if the plaintiff knew the elevator cage was liable to fall, and, with such knowledge, he proceeded to loosen it from its fastenings, and in doing so put himself in a position with respect to it which, as a prudent and careful person, he ought to have avoided, he was guilty of contributory negligence and could not recover. This was manifestly correct, and, in view of the plaintiff's own admission and the testimony of a witness who was working with him at the time of the accident, the first point of the defendant, asking for the direction of a verdict in its favor, should have been affirmed. While the appellee was trying to pry loose the platform of the elevator, he stood, as already stated, with one foot on it and the other on the floor of the building, or on the prying bar. We quote the following from his testimony: "Q.—And when you were so engaged, and in raising the elevator, didn't you say to those men that were under your charge, 'Look out, it may fall; it may drop?' A.—No, I didn't say that. Q.—What did you say? A.—I said, 'Look out, it's going'—but I wanted to say, 'Look out, it's going in place, or it is liable to slip the bar up, or something,' but I didn't get it all out of my mouth, until it was down. Q.—You said to look out, that it was going in place? A.—Yes, sir......Q.— At the time you said to them to look out, were you not standing with one foot on the elevator, and the other on the floor? A.—I was not just standing, I was standing all the weight on the elevator, and I had my foot reached out on the bar. The elevator was a little higher than the floor. Q.—And were you not standing with one foot on the elevator? A.—No, one foot was on the bar, and the other was on the elevator. Q.—And while you were so standing, the elevator dropped? A.—Yes, sir. Q.—And

you fell?  A.—Yes, sir." This testimony is thus corroborated by Clarence Boyles, a witness for the plaintiff, who was assisting him in loosening the elevator: "Q.—What did you do when Mr. Snyder told you to help?  A.—I got a bar, to help, and Mr. Snyder took a bar on the other side.  Q.—Who gave directions there about the work?  A.—Mr. Snyder.  Q.—And at the time and immediately before the accident, what position did Mr. Snyder occupy, where was his foot, and how was he standing?  A.—He had one foot on the floor, and one foot on the elevator.  Q.—What did he say, if anything, to you people; what directions did he give you at and immediately before he did fall?  A.—'Look out, it is liable to drop.'  Q.—And how soon after that did it drop?  A.—I can't recollect that.  Q.—Was it soon, or not?  A.—I don't suppose it was over five or ten minutes, but I don't know.  Q.—When he said 'Look out, it is liable to drop,' what were you each doing?  A.—I had my bar under, and I straightened up. And he still had his bar under, and he didn't straighten up.  Q.—And then he gave those instructions; and soon it dropped?  A.—And soon it dropped.  Maybe in five or ten minutes, I don't know." It thus clearly appears that, while the appellee was attempting to loosen the elevator, with one foot on it and the other on the floor, he knew it was liable to drop, and his own admitted negligence having contributed to his injury, the law will not permit him to recover.

The first, second, third and fourth assignments of error are sustained, the judgment is reversed and is here entered for the defendant.